# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITIZENS BANK, N.A., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-826 |
| WILLIAM BAKER, | ) ) ) | Judge Nora Barry Fischer |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| CITIZENS BANK, N.A., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-920 |
| ANTHONY E. PRATT, | ) ) ) | Judge Nora Barry Fischer |
| Defendant. | ) | |

## MEMORANDUM ORDER

In these related actions, Plaintiff Citizens Bank, N.A. ("Citizens") seeks a preliminary injunction/temporary restraining order against two former employees of its Wealth Management Division, Defendants William Baker, ("Baker") and Anthony Pratt, ("Pratt") after they resigned their employment and teamed up to start a competing wealth management business while they were still on paid leave with Citizens and thereafter. (*See* Civ. A. No. 18-826, Docket No. 1; Civ. A. No. 18-920, Docket No. 1). Citizens' motions have been fully briefed and the Court held a motion hearing on September 4, 2018, the transcript of which was filed on September 10, 2018. (Civ. A. No. 18-826, Docket Nos. 13-15, 23, 26-27, 39, 41; Civ. A. No. 18-920, Docket Nos. 5-8, 21, 24, 25, 33, 35). Although the Court established deadlines for the parties to file supplemental briefs, the parties declined to do so, making these matters ripe for disposition. After careful

1

consideration of the parties' arguments in light of the credible evidence of record, and for the following reasons, Citizens' Motions (Civ. A. No. 18-826, Docket No. 13; Civ. A. No. 18-920, Docket No. 5) are granted.

Since the parties are well familiar with the facts of these matters, most of which are undisputed, the Court first turns to the relevant legal standard. To that end, the grant or denial of a temporary restraining order or a preliminary injunction is within the sound discretion of the Court. *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). The primary purpose of preliminary injunctive relief "is maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994). "Status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The decision to issue a preliminary injunction and/or temporary restraining order is governed by the same four-factor test, wherein Plaintiff must demonstrate:

> "(1) that [it is] reasonably likely to prevail eventually in the litigation and (2) that [it is] likely to suffer irreparable injury without relief. If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiff[...] and (4) whether granting relief would serve the public interest."

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)); *see also Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009) ("The standard used to evaluate whether the issuance of a temporary restraining order is warranted is the same as that used to evaluate whether the issuance of a preliminary injunction is appropriate."). In reaching its decision on the request for injunctive relief, the Court sits as both the arbiter of legal disputes and

trier of fact and is therefore tasked with resolving factual disputes and assessing the credibility of witness testimony. *See e.g., Hudson Global Resources Holdings, Inc. v. Hill*, Civ. A. No. 07-132, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007) ("A court considering whether to grant a preliminary injunction may assess the credibility of witnesses testifying before it at a preliminary injunction hearing, and base its decisions on credibility determinations.").

In this Court's estimation, the credible evidence of record suffices to demonstrate that Citizens is likely to succeed on the merits of its breach of contract claims against Baker and Pratt and that the other prerequisites necessary to secure preliminary injunctions have been satisfied.[1] For purposes of these motions, the Court applies Rhode Island law pursuant to the parties' stipulations in their employment agreements. (Pl. Ex. 1 at ¶ 17; Pl. Ex. 2 at ¶ 17); *see Cook v. Gen. Nutrition Corp.*, No. CV 17-135, 2017 WL 4340664, at *11 (W.D. Pa. Sept. 29, 2017), *aff'd*, No. 17-3216, 2018 WL 4440418 (3d Cir. Sept. 17, 2018) (quoting *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994)) ("In determining the appropriate choice of law, this Court applies Pennsylvania's choice-of-law rules. Under Pennsylvania law, 'courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.'"). The traditional elements of a breach of contract claim apply: existence of a contract; breach of that contract; causation; and damages. *See Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005). Under Rhode Island law, restrictive covenants, such as the non-solicitation provisions to which Baker and Pratt agreed, are enforceable upon a showing "that (1) the provision is ancillary to an otherwise valid transaction or relationship; (2) the provision is supported by adequate consideration; and (3) it has a legitimate interest that the provision is designed to protect." *R.J. Carbone Co. v. Regan*, 582 F. Supp. 2d 220, 224 (D.R.I. 2008). Such provisions must also be

---

[1] In light of these findings, the Court need proceed to evaluate whether the remainder of Plaintiff's claims justify the entry of a preliminary injunction.

reasonable in time and scope. *See id.*

Here, the only apparent disputes between the parties are the scope of the confidentiality and non-solicitation provisions in the contracts and whether they were breached by Baker and Pratt. (Civ. A. No. 18-826, Docket Nos. 13-15, 23, 26-27, 39, 41; Civ. A. No. 18-920, Docket Nos. 5-8, 21, 24, 25, 33, 35). Having carefully reviewed the evidence and evaluated the credibility of the testifying witnesses in light of the parties' arguments, the Court holds that Citizens is likely to succeed on the merits of its position that Baker and Pratt breached both the confidentiality and non-solicitation provisions of their respective employment agreements. Indeed, each essentially admitted as much during their thorough cross-examination by Citizens' counsel and the further questioning by the Court. (*See* Civ. A. No. 18-826, Docket No. 41; Civ. A. No. 18-920, Docket No. 35).

To this end, Baker and Pratt admitted that they were subject to employment agreements containing non-solicitation[2] and confidentiality[3] provisions at the time of their resignations on June

---

[2] Section 9.c. of the employment agreements provide as follows:
> Except as otherwise required in connection with the performance of your duties as contemplated herein, you agree that, during the term of this Agreement and for a period of one (1) year thereafter, you will not, either directly or indirectly, for your own account or as an agent, servant or employee, officer, director, shareholder, partner, member or manager of any entity, or member of any firm, or participant in any venture: . . .
>
> (iii) Solicit by mail, phone, personal meeting or in any other manner the retail securities brokerage, investment advisory or insurance business of any customer whose name became known to you as a direct or indirect result of your employment with CSI and/or Bank.

(Pl. Exs. 1, 2 at §§ 9.c.).

[3] Section 9.a. states that:
> You agree that all memoranda, notes, records or other documents made, or compiled by you, or made available to you, during the term of this Agreement concerning the business of CSI or Bank, or any account or portfolios of any of CSI's or Bank's customers, are confidential business records and shall remain the property of CSI and Bank, and shall be delivered by you to CSI upon the termination of your employment or at any other time at CSI's request, and that none of such records, nor any part of them, is to be removed from the branch of Bank at which you are employed, either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be

4

1, 2018 and that they were reminded of same via correspondence from Citizens dated June 5, 2018. (Pl. Exs. 1-4). Despite their awareness of these provisions, Baker and Pratt used contact information for customers which was provided to them by Citizens during the course of their employment, sent them letter "announcements" of their new venture Riverview Wealth Partners; developed a website with an entire Q&A section devoted to advising Citizens' customers how to transition to working with their team at Riverview; took calls, sent emails, texts and other correspondence and held meetings with Citizens' customers who contacted them; and took steps to transition several client accounts from Citizens to Riverview. (*See* Civ. A. No. 18-826, Docket No. 41 at 78-134; Civ. A. No. 18-920, Docket No. 35 at 78-134). In fact, Baker sent out his notice to 80 such customers on June 7, 2018, (Docket No. 39-6), and Pratt admitted that when he sent out his notice on July 2, 2018, he provided it only to those customers whom had not responded to

---

transmitted verbally except as necessary in the ordinary course of conducting business for CSI.
(Pl. Exs. 1, 2 at §§ 9.a.). Section 9.b. further provides that:
> You may obtain or have access to certain proprietary, privileged or other confidential information of CSI and Bank and their clients or customers, or prospective clients or customers, including those clients or customers you bring in (collectively referred to as "Confidential Information"). Confidential Information includes, but is not limited to, the identity of clients or customers or prospective clients or customers, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures, or personnel information, of CSI or Bank.
> Confidential Information also includes any non-public information disclosed by a client or customer, potential client or customer, or other third party which CSI or Bank has agreed or is otherwise obligated to keep confidential, including, but not limited to, financial information concerning such individual or entity. You acknowledge and agree that CSI and Bank have obligations to protect the confidentiality of this information and that those obligations extend to you. You acknowledge and agree that such Confidential Information derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, competitors of CSI or Bank, that it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and that it is therefore trade secret information under applicable law, including the Uniform Trade Secrets Act.
> You shall not in any way, commercial or otherwise, except to the extent required by the proper performance of your duties pursuant to this Agreement, use or disclose to any person, for any reason or at any time (whether during or after the term of this Agreement), any Confidential Information.

(Pl. Exs. 1, 2 at §§ 9.b.).

Baker's initial "announcement," (Docket No. 39-7), a rather transparent attempt to gain the business of those individuals they had not yet secured. (Civ. A. No. 18-826, Docket No. 41 at 129-131; Civ. A. No. 18-920, Docket No. 35 at 129-131; Pl. Exs. 5-6); *see also Corp.Techs., Inc. v. Harnett*, 731 F.3d 6, 12 (1st Cir. 2013) (noting that while public announcements of changes in employment are permissible, targeted mailings to former customers "may cross the line into impermissible solicitation."). In addition, Pratt's letter – which his "teammate" Baker sent out while Pratt was on vacation – contains the aforementioned website address which, again, clearly solicits the business of Citizens' customers.[4] (Civ. A. No. 18-826, Docket No. 41 at 129-131; Civ. A. No. 18-920, Docket No. 35 at 129-131; Pl. Exs. 5-6). Setting aside the parties' disputes as to whether the customer list constitutes a trade secret or not, it is this Court's opinion that the customers' identities and contact information (including addresses) are appropriately deemed confidential information under §§ 9.a. and 9.b of the employment agreements and those provisions required Baker and Pratt to return that information to Citizens upon their resignation and to maintain the confidentiality of same indefinitely. (*See* Pl. Exs. 1-2). They were reminded of such obligations by Citizens and were warned that Citizens would pursue this type of action if they did not adhere to their agreements. (*See* Pl. Exs. 3-4). But, they did not heed these instructions and provided Citizens' confidential information to their new employer, Riverview, and used that information to further their own personal business interests. The timing of these solicitations was well within the 1-year time-frame set forth in the employment agreements, particularly given Baker and Pratt's concessions that they were placed on "garden leave" after they resigned on June

---

[4] The Court notes that it interprets nearly every question on the website as obviously soliciting Baker and Pratt's former clients, whom they admitted were Citizens customers. (*See e.g.,* Docket No. 39-8 at 2 ("What changes will occur for me? When you decide to transition your relationship to Riverview Wealth Partners, very little will change. Your advisor team will remain the same moving forward with the same dedication to helping you achieve your goals." "Will my portfolio be managed by the same team? Yes! Your advisors will continue to be Tony Pratt and Will Baker. Our team at Riverview Wealth Partners has been working together for many years and we look forward to continuing our relationship with you.")).

1, 2018 such that they remained on Citizens' payroll through July 1, 2018, without any official duties to complete. (Civ. A. No. 18-826, Docket No. 41 at 106-09, 111, 126, 129; Civ. A. No. 18-920, Docket No. 35 at 106-09, 111, 126, 129). Hence, the record reflects that Citizens continued paying Baker and Pratt their six-figure salaries while they were actively pursuing its customers' business for their new venture.

Moving on, the defenses raised by Baker and Pratt do little to convince this Court that Citizens is not likely to succeed on the merits of its breach of contract claims. (*See* Civ. A. No. 18-826, Docket Nos. 23, 29; Civ. A. No. 18-920, Docket Nos. 24, 25). Again, the confidentiality provisions under §§ 9.a and 9.b of the employment agreements cover the identities and contact information of customers and there is nothing in those provisions which would suggest that Baker and Pratt were not obligated to return and maintain confidence of that information even if it "synced" to their smartphones, as they maintain. *See* Pl. Exs. 1-2. As for Baker, he complains that Citizens did not do enough to maintain the confidentiality of such information because it did not "wipe" his phone as the policies permitted, (a point which Citizens offered sworn testimony to refute), but Baker also told Dan LaPlante in his resignation email that he deleted this information himself. *See* Pl. Ex. 11 at 1 ("Below are the steps I have taken in preparation of my separation from service: … 3. I deleted the GOOD app (Blackberry never activated) & the RSA Token from my cell phone."). Further, while the Court accepts that financial advisors have fiduciary obligations to their clients, Baker and Pratt's actions, (i.e., sending out announcements, establishing the website, including the Q&A for their former clients and then actively pursuing any Citizens' customer who contacted them), undermine their position that they only sent the letters to inform the customers of their new contact information. (*See* Civ. A. No. 18-826, Docket No. 41 at 78-134; Civ. A. No. 18-920, Docket No. 35 at 78-134). Like Citizens argues, any such

notice could have directed the customers to contact someone on Citizens' team to assist with their accounts, particularly given that Baker and Pratt were barred by their employment agreements from engaging those customers. (Pl. Exs. 1-2). Indeed, this is precisely what Baker said he did with respect to his office voicemail as he informed LaPlante in his resignation email. (*See e.g.*, Pl. Ex. 11 at 1 ("Below are the steps I have taken in preparation of my separation from service: … 2. I have changed my voicemail to a generic one asking the caller to contact Julie Dengler for assistance at 412-867-4451")). All told, the Court finds that Citizens has sufficiently demonstrated through credible evidence that it is likely to succeed on the merits of its breach of contract claims against Baker and Pratt. *See K.A.*, 710 F.3d at 105.

The remaining elements of a preliminary injunction have also been met here. In this regard, Baker and Pratt both agreed that violations of the confidentiality and non-solicitation provisions would cause irreparable harm to Citizens. (Docket Nos. 39-2 and 39-3 at § 9(g)). Numerous courts have recognized that a financial services company is irreparably harmed when a financial advisor violates these types of provisions and pursues the company's clients. *See, e.g., Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 17 (1st Cir. 2009) (applying Rhode Island law and holding that "protecting a business's confidential information and goodwill—such as the special relationship [an employer's] sales force has developed with customers"—is a legitimate interest). Further, while money damages could be recovered for the losses arising from any customers who have left Citizens for Riverview, an injunction is necessary to prevent irreparable harm and loss of goodwill and relationships with customers who have remained with Citizens, despite Baker and Pratt's overtures. *Id*. Next, a preliminary injunction would not cause more harm to Baker and Pratt than Citizens because they expressly agreed not to solicit Citizens' customers for a period of one-year following their departure and were paid handsomely while employed by Citizens. (Pl.

Exs. 1-2 at §§ 9.a., 9.b.). However, the injunction does not bar them from operating Riverview and providing financial advice and services to other individuals who were not Citizens' customers. *See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F. Supp. 2d 491, 497-98 (E.D. Pa. 2000) ("any harm to Napolitano would be self-inflicted; he anticipated that Merrill Lynch immediately would seek to enforce its unambiguous employment contract, and chose to breach it nevertheless. The self-inflicted nature of any harm suffered by the wrongdoer (Napolitano) weighs heavily in favor of granting preliminary injunctive relief."). Finally, the enforcement of reasonable non-solicitation and confidentiality provisions is in the public's interest as individuals and entities who enter into these types of contracts should expect that courts will enforce them in the event of a breach. *See K.A.*, 710 F.3d at 105.

For all of these reasons,

IT IS HEREBY ORDERED that Citizens' Motions (Civ. A. No. 18-826, Docket No. 13; Civ. A. No. 18-920, Docket No. 5) are GRANTED;

IT IS FURTHER ORDERED that Defendants William Baker and Anthony Pratt and all persons or entities acting in concert with them, including but not limited to Riverview Wealth Partners, LLC and Stratos Wealth Advisors, LLC are hereby enjoined as follows:

(a) From contacting or soliciting business from any current or prospective client of Citizens whom Baker and/or Pratt served or whose name became known to Baker and/or Pratt while they were employed by Citizens;

(b) From altering, destroying, using, disclosing, or transmitting Citizens' records or the information contained therein, including but not limited to the names, addresses, email addresses, telephone numbers, and financial information of Citizens' current and prospective clients; and,

(c) Baker and Pratt shall immediately cease using and return all original Citizens records

and the information contained therein noted in (b) above and reproductions thereof, whether in paper, electronic, or other form by **October 12, 2018**; and,

IT IS FURTHER ORDERED that Baker and Pratt shall file affidavits on the Court's CM/ECF System confirming that their compliance with these directives by **October 12, 2018 at 5:00 p.m.**

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: October 5, 2018
cc/ecf: All counsel of record